UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| US NORTHEAST DREDGE & MARINE, LLC; DR100001, LLC; DR200001, LLC and TU200001, LLC<br><br>    Plaintiffs,<br><br>v.<br><br>STARR INDEMNITY AND LIABILITY COMPANY,<br><br>    Defendant. | C.A. No.: |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

US Northeast Dredge & Marine, LLC ("USNEDM"), DR100001 LLC ("DR1"), DR200001, LLC ("DR2"), and TU200001, LLC ("TU2") (together, "Plaintiffs") allege as follows in support of their Complaint and Demand for Jury Trial against Starr Indemnity & Liability Company ("Starr"):

1. USNEDM is a limited liability company duly organized and existing under the laws of the state of New Hampshire with its principal place of business located at 32 Anne Drive, Hampstead, NH, 03841.  The sole member of USNEDM is Edward Valliere, who is a resident and citizen of New Hampshire.

2. DR1 is a limited liability company duly organized and existing under the laws of the state of New Hampshire with its principal place of business located at 32 Anne Drive, Hampstead, NH, 03841.  The sole member of DR1 is Edward Valliere, who is a resident and citizen of New Hampshire.

1

3. DR2 is a limited liability company duly organized and existing under the laws of the state of New Hampshire with its principal place of business located at 32 Anne Drive, Hampstead, NH, 03841.  The sole member of DR2 is Edward Valliere, who is a resident and citizen of New Hampshire.

4. TU2 is a limited liability company duly organized and existing under the laws of the state of New Hampshire with its principal place of business located at 32 Anne Drive, Hampstead, 03841.  The sole member of TU2 is Edward Valliere, who is a resident and citizen of New Hampshire.

5. Upon information and belief, Starr is an insurance company incorporated in the State of Texas, which maintains its main administrative office and principal place of business at 399 Park Avenue, 8th Floor, New York, New York.

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1333, as this matter arises out of a maritime contract for insurance.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is a complete diversity of citizenship between the Plaintiffs (and their members) and Starr, and there is in excess of $75,000 in controversy, exclusive of interest and costs.

7. This Court has specific personal jurisdiction over Starr.

8. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391.

9. Starr issued Policy No. MASHIBN00022818 ("Primary Policy"), with an effective date of November 18, 2018 – November 18, 2019 ("Primary Policy Period").  All Plaintiffs are insured under the Primary Policy.  A true and accurate copy of the Primary Policy is attached hereto as **Exhibit A.**

10. Starr issued Plaintiffs "Bumbershoot" policy No. MASILBN00074918 ("Bumbershoot Policy"), with a policy period of November 18, 2018 – November 18, 2019 ("Bumbershoot Policy Period"). All Plaintiffs are insured under the Bumbershoot Policy. A true and accurate copy of the Bumbershoot Policy is attached hereto as **Exhibit B**.

11. At all relevant times, all Plaintiffs were related entities, with USNEDM serving as the operating company and the remaining Plaintiffs owning various assets used to perform marine dredging and marine-based construction projects.

12. At all relevant times, DR2 was the owner of a 90-foot dredge barge known as "DREDGE 200," which was an insured asset under the Hull and Machinery coverage of the Primary Policy, and leased to USNEDM.

13. At all relevant times, DR1 was the owner of a dump scow known as "TMC 140," which was an insured asset under the Hull and Machinery coverage of the Primary Policy, and leased to USNEDM.

14. At all relevant times, DR1 was the owner of a barge known as "TRIPP87," which was an insured asset under the Hull and Machinery coverage of the Primary Policy, and leased to USNEDM.

15. At all relevant times, TU2 was the owner of a 48x24 foot barge known as "AGNES," which was an insured asset under the Hull and Machinery coverage of the Primary Policy, and leased to USNEDM.

16. At all relevant times, USNEDM was the charterer in possession of a tugboat known as "RICHARD PEARSON 2," which was owned by Custom Marine, Inc.

17. On or about December 2, 2018, the Dredge 200, TMC 140, TRIPP87, AGNES, and RICHARD PEARSON 2 were all lost or damaged at sea during a storm in Cape Cod Bay (the "Incident").

18. The Incident occurred during the Primary Policy Period and the Bumbershoot Policy Period and the policies were in full force and effect as of the time of the Incident.

19. At the time of the Incident and at the commencement of the voyage during which the Incident took place, the Dredge 200, TMC 140, TRIPP87, AGNES, and RICHARD PEARSON 2 were seaworthy and otherwise complied with all conditions for coverage under the Primary Policy and Bumbershoot Policy.

## COUNT I – BREACH OF CONTRACT (DREDGE 200)

20. All preceding paragraphs are repeated and realleged as if fully set forth herein.

21. Pursuant to the Hull and Machinery coverage of the Primary Policy, the DREDGE 200 had an agreed value of $1.5 million.

22. The DREDGE 200 was sunk during the Incident, resulting in the total loss of the DREDGE 200.

23. The loss of the DREDGE 200 was caused by a covered peril under the Hull and Machinery coverage of the Primary Policy and falls within the insuring agreement of the Hull and Machinery coverage of the Primary Policy.

24. There are no exclusions under the Hull and Machinery coverage of the Primary Policy that apply to the loss of the DREDGE 200.

25. USNEDM and DR2 have made a claim for coverage under the Hull and Machinery Coverage of the Primary Policy for loss of the DREDGE 200, which Starr has denied.

26. Starr's denial of USNEDM and DR2's claim for coverage for the loss of the DREDGE 200 constitutes a breach of Starr's obligations under the Hull and Machinery coverage of the Primary Policy and has caused financial harm to USNEDM and DR2.

27. All conditions precedent to recovery for loss of the DREDGE 200 and to commencement of this lawsuit have been satisfied.

## COUNT II – BREACH OF CONTRACT (TMC 140)

28. All preceding paragraphs are repeated and realleged as if fully set forth herein.

29. The TMC 140 was damaged during the Incident.

30. The damage to the TMC 140 was caused by a covered peril under the Hull and Machinery coverage of the Primary Policy and falls within the insuring agreement of the Hull and Machinery coverage of the Primary Policy.

31. There are no exclusions under the Hull and Machinery coverage of the Primary Policy that apply to the damage to the TMC 140.

32. During the Primary Policy Period, the TMC 140 was also an insured asset under a Breach of Warranty coverage section of the Primary Policy, pursuant to which Starr agreed to pay Eastern Bank, as the holder of a mortgage on the TMC 140, in the event that Starr declined to cover loss of, or damage to, TMC 140 because of "any act of, or omission by" Plaintiffs, "or breach of any warranty, express or implied, in the Hull Policy [section of the Primary Policy] other than breach of the warranty contained in the F.C. & S. Clause thereof; PROVIDED that such act or omissions or breach of warranty occurred without the consent or privity of" Eastern Bank.

33. USNEDM, DR1 and Eastern Bank have made claims for coverage under the Primary Policy, including the Hull and Machinery coverage and Breach of Warranty coverage sections, for damage to the TMC 140, which Starr has denied and refused to pay.

34. Starr's denial of USNEDM and DR1's, and Eastern Bank's claims for coverage for the damage to the TMC 140 constitutes a breach of Starr's obligations under the Primary Policy, including the Hull and Machinery coverage and Breach of Warranty coverage sections, and has caused financial harm to USNEDM, DR1, and Eastern Bank.

35. Eastern Bank has assigned to USNEDM and DR1 all right, title and interest it has under the Primary Policy with respect to the TMC 140 arising out of the Incident.

36. All conditions precedent to recovery for damage to the TMC 140 and to commencement of this lawsuit have been satisfied.

### COUNT III – BREACH OF CONTRACT (TRIPP87)

37. All preceding paragraphs are repeated and realleged as if fully set forth herein.

38. The TRIPP 87 was damaged during the Incident.

39. The damage to the TRIPP 87 was caused by a covered peril under the Hull and Machinery coverage of the Primary Policy and falls within the insuring agreement of the Hull and Machinery coverage of the Primary Policy.

40. There are no exclusions under the Hull and Machinery coverage of the Primary Policy that apply to the damage to the TRIPP 87.

41. During the Primary Policy Period, the TRIPP 87 was also an insured asset under a Breach of Warranty coverage section of the Primary Policy, pursuant to which Starr agreed to pay Eastern Bank and the SBA, as the holders of a mortgage on the TRIPP 87, in the event that Starr declined to cover loss of, or damage to, TRIPP 87 because of "any act of, or omission

by" Plaintiffs, "or breach of any warranty, express or implied, in the Hull Policy [section of the Primary Policy] other than breach of the warranty contained in the F.C. & S. Clause thereof; PROVIDED that such act or omissions or breach of warranty occurred without the consent or privity of" Eastern Bank.

42. USNEDM, DR1 and Eastern Bank have made claims for coverage under the Primary Policy, including the Hull and Machinery coverage and Breach of Warranty coverage sections, for damage to the TRIPP 87, which Starr has denied.

43. Starr's denial of USNEDM and DR1's, and Eastern Bank's claims for coverage for the damage to the TRIPP 87 constitutes a breach of Starr's obligations under the Primary Policy, including the Hull and Machinery coverage and Breach of Warranty coverage sections, and has caused financial harm to USNEDM, DR1, and Eastern Bank.

44. Eastern Bank has assigned to USNEDM and DR1 all right, title and interest it has under the Primary Policy with respect to the TRIPP 87 arising out of the Incident.

45. All conditions precedent to recovery for damage to the TRIPP 87 and to commencement of this lawsuit have been satisfied.

### COUNT IV – BREACH OF CONTRACT (AGNES)

46. All preceding paragraphs are repeated and realleged as if fully set forth herein.

47. The AGNES was damaged during the Incident.

48. The damage to the AGNES was caused by a covered peril under the Hull and Machinery coverage of the Primary Policy and falls within the insuring agreement of the Hull and Machinery coverage of the Primary Policy.

49. There are no exclusions under the Hull and Machinery coverage of the Primary Policy that apply to the damage to the AGNES.

50. USNEDM and TU2 have made claims for coverage under the Hull and Machinery coverage of the Primary Policy for the damage to the AGNES, which Starr has denied.

51. Starr's denial of USNEDM and TU2's claims for coverage for the damage to the AGNES constitutes a breach of Starr's obligations under the Hull and Machinery coverage of the Primary Policy and has caused financial harm to USNEDM and TU2.

52. All conditions precedent to recovery for damage to the AGNES and to commencement of this lawsuit have been satisfied.

### COUNT V – BREACH OF CONTRACT (RICHARD PEARSON 2)

53. All preceding paragraphs are repeated and realleged as if fully set forth herein.

54. Pursuant to the Bumbershoot Policy, Starr is obligated to indemnify Plaintiffs for, among other things, all amounts (up to the Bumbershoot Policy limit of liability), that Plaintiffs are "legally liable to pay or by contract or agreement become liable to pay in respect of claims made against the Assured for damages of whatever nature, on account of: … (ii) Property Damage; caused by or arising out of each occurrence happening anywhere in the world."

55. At all relevant times, the RICHARD PEARSON 2 was owned by Custom Marine, Inc.

56. Pursuant to a Charter Agreement with Custom Marine, Inc. dated September 26, 2018, USNEDM obtained possession of the RICHARD PEARSON 2 on or about October 1, 2018.

57. The RICHARD PEARSON 2 remained under charter to, and in the possession, custody and control of USNEDM through and including December 2, 2018, when the RICHARD PEARSON 2 was lost in the Incident, which was an occurrence contemplated by the Insuring Agreement of the Bumbershoot Policy.

14195503.1.1.1.1.1.1.1.1

58. As a result of the Incident, accident or occurrence, USNEDM was liable to Custom Marine, Inc. and USNEDM has demanded coverage for its liability to Custom Marine, Inc.

59. Starr has denied any obligation to indemnify USNEDM for any liability to Custom Marine, Inc. arising out of the Incident that caused the loss of the RICHARD PEARSON 2.

60. USNEDM has paid Custom Marine, Inc. $188,643.37 to satisfy its liability to Custom Marine, Inc. for the loss of the RICHARD PEARSON 2.

61. Pursuant to the Bumbershoot Policy, Starr is obligated to indemnify USNEDM for all amounts paid to Custom Marine, Inc. to satisfy its liability to Custom Marine, Inc.

62. Starr has failed and refused to indemnify USNEDM for USNEDM's liability and payment to Custom Marine, Inc.

63. Starr's denial of USNEDM claims for coverage and indemnification for liability and payment to Custom Marine, Inc. constitutes a breach of Starr's obligations under the Bumbershoot Policy and has caused financial harm to USNEDM.

64. All conditions precedent to recovery for loss of the RICHARD PEARSON 2 and to commencement of this lawsuit have been satisfied.

## COUNT VI – DECLARATORY JUDGMENT

65. All preceding paragraphs are repeated and realleged as if fully set forth herein.

66. USNEDM (directly and as assignee from Eastern Bank), DR1 (directly and as assignee from Eastern Bank), DR2, and TU2 are entitled to coverage and payment under the Primary Policy and Bumbershoot Policy as set forth in the preceding counts.

67. Starr has denied, or otherwise limited, USNEDM's, DR1's, DR2's, TU2's and Eastern Bank's claims for coverage under the Primary Policy and Bumbershoot Policy as set forth in the preceding counts.

14195503.1.1.1.1.1.1.1.1

68. A current and justiciable controversy exists concerning USNEDM's, DR1's, DR2's, TU2's, and Eastern Bank's entitlement to coverage, and the amount of coverage, under the Primary Policy and Bumbershoot Policy.

69. USNEDM, DR1, DR2, and TU2 are entitled to a judicial declaration that their claims and Eastern Bank's claims as set forth herein are covered by the terms of the Primary Policy and Bumbershoot Policy, and that USNEDM, DR1, DR2, and TU2 are entitled to the amount of benefits demanded.

70. USNEDM, DR1, DR2, and TU2 are entitled to an award of attorneys' fees and costs incurred in connection with this action, pursuant to NH RSA 491:22-b.

**COUNT VII – VIOLATION OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

71. All preceding paragraphs are repeated and realleged as if fully set forth herein.

72. The Primary Policy and Bumbershoot Policies are contracts that are subject to the implied duty of good faith and fair dealing. Under this "implied-in-fact duty of cooperation," Starr has a duty to achieve what has been promised to USNEDM, DR1, and Eastern Bank them under the contracts. *Great Lakes Aircraft Co., Inc. v. City of Claremont*, 135 N.H. 270, 294 (1992).

73. Here, a fundamental expectation of USNEDM, DR1, DR2, TU2 and Eastern Bank as reflected in the insurance policies issued by Starr, is that Starr would adjust and administer claims under the policy in a fair, reasonable, honest, and timely manner.

74. Starr has violated its duties of good faith and fair dealing implied in the Primary Policy and Bumbershoot Policies by taking varying positions in an effort to deny or reduce the amount of money it would pay to USNEDM, DR1, DR2, TU2, and Eastern Bank.

75. Starr has violated its duties of good faith and fair dealing implied in the Primary Policy and Bumbershoot Policies by failing to fairly and promptly adjust, determine and evaluate USNEDM's, DR1's, DR2's, TU2's and Eastern Bank's claims under the policies.  In doing so, Starr placed USNEDM, DR1, DR2, and TU2 in an untenable economic position so that Starr could attempt to take advantage of its delay and economic leverage in order to convince USNEDM, DR1, DR2 and TU2 to accept less than the full amount of benefits owed to them under the Primary Policy and Bumbershoot Policy.

76. USNEDM, DR1, DR2, TU2 and Eastern Bank have been financially harmed as a direct and proximate result of Starr's breach of its implied duty of cooperation and good faith, and will continue to suffer substantial monetary damages, including but not limited to, continuous accrual of interest on the loan from Eastern Bank that should have been satisfied by the proceeds of the Primary Policy and Bumbershoot policy, as well as other damages and consequential damages.

77. Eastern Bank has assigned to USNEDM and DR1 all right, title and interest it has in any claim Starr as a result of Starr's administration, adjustment, and/or handling of any claim submitted to Starr by the Bank pertaining to the TMC 140 and TRIPP 87.

## COUNT VIII — ATTORNEYS' FEES AND COSTS

78. All preceding paragraphs are repeated and realleged as if fully set forth herein.

79. When, as in this case, a party is "forced to litigate against an opponent whose position is patently unreasonable," as determined on an objective basis, the prevailing party may be entitled to their attorneys' fees.  *Keenan v. Fearon*, 130 N.H. 494, 502 (1988) ("[W]e have recognized a constitutionally created court's power to award counsel fees in any action commenced, prolonged, required or defended without any reasonable basis in the facts

provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be.").

80. Similar to the principles articulated in *Keenan*, counsel fees may be awarded by the Court upon a finding that "one party has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons . . . '"; "where the litigant's conduct can be characterized as unreasonably obdurate or obstinate . . ."; "and where it should have been unnecessary for the successful party to have brought the action." *Harkeem v. Adams*, 117 N.H. 687, 691 (1977) (citations omitted).

81. The circumstances of this case warrant the Court's exercise of its power to award USNEDM, DR1, DR2 and TU2 their reasonable attorneys' fees and costs in this action.

82. Starr has breached its obligations to USNEDM, DR1, DR2, TU2 and Eastern Bank with no reasonable justification.

83. More than simply breaching its obligations under the Primary Policy and Bumbershoot Policy, Starr has acted unconscionably and in bad faith by taking inconsistent and shifting positions to deny or reduce coverage and delaying payment of amounts that are clearly owed to USNEDM, DR1, DR2, TU2, and Eastern Bank.

84. Eastern Bank has assigned to USNEDM and DR1 all right, title and interest it has in any claim Starr as a result of Starr's administration, adjustment, and/or handling of any claim submitted to Starr by the Bank pertaining to the TMC 140 and TRIPP 87.

85. Plaintiffs should properly be awarded their reasonable attorneys' fees and costs incurred in bringing this action.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

A. Enter Judgment for Plaintiffs, including an award of all amounts owed under the Primary Policy and Bumbershoot Policy, damages according to proof, declaratory relief as requested herein, prejudgment interest, and attorneys' fees and costs (including, but not limited to, pursuant to NH RSA 491:22-b); and

B. Grant such further and other relief as justice may require.

**JURY DEMAND:** Plaintiffs respectfully request trial by jury on all issues so triable.

Respectfully submitted,

US NORTHEAST DREDGE & MARINE, LLC; DR100001, LLC; DR200001, LLC and TU200001, LLC,

By their Attorneys,

Pierce Atwood LLP

Dated:  November 30, 2021

By: /s/ Michele E. Kenney
Michele E. Kenney
N.H. Bar No. 19333
One New Hampshire Avenue
Suite 350
Portsmouth, NH 03801
(603) 433-6300
mkenney@pierceatwood.com

*Of Counsel*:

Michael J. Daly
Pierce Atwood LLP
One Financial Plaza
26th Floor
Providence, RI 02903
(401) 588-5113
mdaly@pierceatwood.com